[L. A. No. 1439. In Bank.—June 19, 1907.]

## THOMAS L. TALLY, Respondent, v. J. G. GANAHL, Appellant.

STARE DECISIS—APPLICABILITY TO SUBSEQUENT ACTION.—The doctrine of the law of the case is this, that where upon an appeal the supreme court in deciding the appeal states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and in any subsequent suit for the same cause of action, and this although in its subsequent consideration the supreme court may be clearly of the opinion that the former decision is erroneous in that particular. It is a necessary corollary of this doctrine that the former ruling is not binding upon the second hearing, except as to questions which involve and are controlled by the same principle.

BUILDING CONTRACT—LIABILITY OF SURETY ON BOND—CERTIFICATE OF ARCHITECT.—A contract for the erection of a building contained a provision to the effect that if the contractor abandoned the work the owner might complete it, and that any damages incurred through the contractor's default should be audited and certified by the architects, whose certificate should be conclusive between the parties. A certain firm of architects were employed to superintend the work and were designated by name in the contract. The contractor abandoned the work, and immediately thereafter the owner discharged the original firm of architects on the ground of their carelessness and incompetency and employed another architect, who superintended the construction of the building until its completion. A certificate of this latter architect was given, together with a certificate of one of the members of the firm of discharged architects. A certificate of the other member of the firm was not given, it appearing that the firm had been dissolved a short time after the completion of the building, and that he could not be found. *Held,* in an action against a surety on a bond given by the contractor to secure the performance of the contract in which the court found

the facts as above stated and in which independent evidence was offered showing not only what the expense and damage actually were, but that they were in fact reasonable, that the failure to comply in absolute strictness with the requirements of the contract as to the architect's certificate was excused.

ID.—DAMAGES—ATTORNEY'S FEE TO SECURE DISCHARGE OF MECHANICS' LIENS—DELAY IN COMPLETION OF BUILDING—LOST RENTS.—In such 'action, where the bond sued on covenanted that the contractor should complete the building within the time specified and should deliver it to the owner free from mechanics' liens, the owner is entitled to recover, by way of special damages, the reasonable amount of a fee paid an attorney to secure the discharge of such liens and the rental value of the building for the time during which its completion was delayed.

JOINT SURETIES—ACTION AGAINST ONE SURETY—ABSENCE OF CO-SURETY FROM STATE.—An action to recover a personal judgment may be maintained against one of two joint sureties on a bond, if at the time the action is commenced the surety not sued was absent from the state and without the jurisdiction of the court.

APPEAL from a judgment of the Superior Court of the County of Los Angeles. N. P. Conrey, Judge.

The facts are stated in the opinion of the court, and in the opinion in *Tally* v. *Parsons,* 131 Cal. 516.

Charles L. Batcheller, for Appellant.

Clarence A. Miller, and Benjamin E. Page, for Respondent.

THE COURT.—In the case of *Tally* v. *Parsons,* 131 Cal. 516, [63 Pac. 833], the judgment was reversed and the cause remanded for a new trial. The sole appellant in that case was J. G. Ganahl, the appellant here. When the case reached the superior court after a reversal the plaintiff voluntarily dismissed the action without prejudice to a new action, and judgment of dismissal was entered accordingly. Thereupon he began the present action against Ganahl alone, upon the same bond as that sued on in the former action. Judgment in the present action was given in favor of the plaintiff. The present appeal is from that judgment. Certain alleged errors of law are presented upon the appeal by bill of exceptions.

The bond sued on was given by Ganahl and others to secure the performance by the principal, H. Parsons, of a contract whereby he agreed to build for Mary A. Tally, assignor of

plaintiff, a certain dwelling-house for the sum of two thousand three hundred and forty dollars. After partially completing the building Parsons abandoned the work, and thereupon Mary A. Tally proceeded to complete the building herself, according to the plans and specifications mentioned in the contract, at her own expense. The judgment given in this case was for the sum of $827.05; consisting of $515.86, being the difference between the contract price and the cost of completion of the building, of one hundred dollars as attorney's fees in certain suits for the foreclosure of liens caused by the failure of Parsons to pay for labor and material, and $131.55 for rents lost to the owner during the delay caused by the contractor's failure; the balance, $79.64, being for interest due the plaintiff on account of the delay in payment.

1. The principal point decided by this court on the former appeal was that, under the terms of the contract, and upon this court's conception in that case of the theory upon which the plaintiff based his right to recover, it was an essential condition precedent to such recovery that the architects of the building should have audited and certified the expense incurred by the owner in completing the building and the damage caused by the failure of the contractor to perform. No such certificate having been made, so far as was shown by the record in the case, the judgment was reversed. This ruling, appellant claims, has become the law of the case, binding and conclusive in this action, not only upon the superior court, but upon this court and on this appeal as well.

The respondent contends that the doctrine of the law of the case does not apply where the action in which the ruling was made is subsequently dismissed without prejudice, and a new action begun upon the same cause. The contrary has been held in a case where, after a decision on the defendant's appeal, reversing the judgment because a certain power of attorney was insufficient to authorize the particular conveyance on which plaintiff relied, the defendants began a new suit in equity to enjoin further claims under the void conveyance. (*Portland Tr. Co. v. Coulter,* 23 Or. 131, [31 Pac. 280].) It was also held in that case, however, that the former construction of the power was correct. But, for the purposes of this case, we think it better to assume, without deciding the point, that the doctrine laid down in *Tally v. Parsons,* 131 Cal.

516, [63 Pac. 833], is binding in this case, so far as it presents precisely the same question.

The doctrine of the law of the case is this: That where, upon an appeal, the supreme court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action, and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular. (*Sharon* v. *Sharon,* 79 Cal. 633, [22 Pac. 26, 131]; *Wixon* v. *Divine,* 80 Cal. 386, [22 Pac. 224]; *Mattingly* v. *Pennie,* 105 Cal. 516, [45 Am. St. Rep. 87, 39 Pac. 200]; *People* v. *Thomson,* 115 Cal. 160, [46 Pac. 912].) Indeed, it is only when the former rule is deemed erroneous that the doctrine of the law of the case becomes at all important. It is a necessary corallary of this doctrine that the former ruling is not binding upon the second hearing, except as to questions which involve and are controlled by the same principle. (*Mattingly* v. *Pennie,* 105 Cal. 516, [45 Am. St. Rep. 87, 39 Pac. 200].)

2. Treating the question, then, as one to be governed by the law of the former decision, appellant contends that there was a failure to show a compliance with the provision of the contract calling for the certificate of the architects to the amount of the expense and damage incurred by the owner, and that the certificate which was actually introduced in evidence was an insufficient compliance with this requirement of the contract. The facts in this regard, as pleaded and found by the court, are that Ehlers and Liddell were the architects employed to superintend the construction of the building, and were designated by name in the contract; that immediately after the abandonment of the contract by Parsons, the contractor, these architects were discharged from employment by the owner upon the ground of their carelessness and incompetency, and the court finds that in fact they were careless and incompetent. The owner immediately employed another architect who superintended the construction of the building until its completion. The certificate of this architect is given, together with the certificate of the discharged architect Liddell.

The certificate of Ehlers is not produced, it appearing that the firm of Ehlers & Liddell had dissolved partnership a short time after the completion of the building, and that Ehlers, though he had been in Los Angeles at the time of the trial of the first case, was not to be found thereafter. The question thus presented is whether a justifiable excuse is shown for the failure to comply strictly with the terms of the contract. In full recognition of the right of sureties to stand upon the letter of their contract, we think a sufficient excuse is thus shown. Appellant argues, still urging the law of the case, that the proofs in this regard do not meet what he considers to be the requirements laid down in *Tally* v. *Parsons*, 131 Cal. 516, [63 Pac. 833]. It is there said: "The finding states that the owner discharged the architects on the ground that they were careless, incompetent and dishonest, and there is no finding that such grounds were true. Even if they were true there would have to be some allegation or finding showing a good and sufficient excuse for not having the amount audited and certified by the architect, if the architects had refused to act in the matter, or if they had acted, but acted fraudulently or corruptly or through mistake, the plaintiff could have alleged and proven such excuse, and thus relieved himself of the condition." Appellant would construe the language of the last sentence as expressing the only methods by which a plaintiff under such circumstances could obtain relief. Such, however, is not its meaning. Aside from the circumstance that the language, being addressed to a state of facts not existing in the earlier case, is simply *dictum*, and therefore not binding, appellant's interpretation distorts its true intent. The language used is by way of illustration. It instances examples of what would be a sufficient excuse for a failure of strict compliance, but by no means undertakes or pretends to set forth all sufficient grounds for such excuse. Thus, for example, if the two architects had died before the possibility of compliance with the terms of the contract it would not be said that some substituted method of certifying the expense and damage would not have been permissible. It is a reasonable construction of the contract that it contemplated the production of the certificate of the architect or architects actually superintending the work. Such a certificate was in fact presented.. Moreover, there was the separate certificate of one

of the two architects named in the contract, besides evidence of the inability to secure the other because of his absence and unknown whereabouts. Still further, it may be pointed out that while the evidence of the certificate is declared to be conclusive proof upon the matter of expense and damage, evidence independent of the certificate was offered, showing not only what the expense and damage actually were, but that they were in fact reasonable. This evidence would have supported a judgment had the action been in form for the recovery of the value of the labor which plaintiff's assignor was obliged to employ and the value of the material which he was obliged to purchase. And finally, the evidence upon all of these matters stands without conflict, defendant resting solely upon the technical proposition of a non-compliance with the terms of the contract. Indeed, had plaintiff pleaded his action in *quantum meruit* and relied for his recovery upon the value as distinguished from his cost and outlay, his case would have been full and complete. It is concluded upon this proposition that sufficient excuse has been shown for plaintiff's failure to comply in absolute strictness with the requirements of the contract.

3. The bond sued on covenanted that the contractors should complete the building within the time specified and should deliver it to the owner "free from all liens and claims that may be made or filed against the same, for or in respect of any labor or materials performed or furnished on or for said building." After the completion of the building certain persons who had performed labor for Parsons in the erection of the building and others who had furnished him materials therefor filed claims of liens against the premises and began suits to foreclose the same. It became necessary for Mary A. Tally to employ an attorney to advise her in regard to these suits and make proper defense thereto sufficient to protect her interests, and she did so at an expense of one hundred dollars. As a result of the suits and of her employment of the attorney, the amount of the liens was ascertained, she paid the amount into court, and secured a discharge of the several liens. The amount paid to the attorney in these suits was claimed in the complaint as special damages and was allowed by the court after due proof of the facts. We perceive no error in this. It was damages proximately caused by the breach of the agree-

ment to deliver the building free from liens, a covenant for which the bond was security. The liens in question were fairly within the terms of that agreement, the owner was acting in good faith, and the fee was found to be reasonable.

4. One of the conditions of the bond was that the contractor should complete the building on or before November 1, 1897. The finding of the court is that by the default of the contractor the completion of the building was delayed two months and nineteen days after that date, and that for the rent during the period of this delay the owner could have obtained the sum of $131.55. This was alleged as special damage and was included in the judgment. It was directly caused by the breach of the bond and was properly allowed.

5. There was no error in overruling the demurrer to the complaint for nonjoinder of Randall, one of the two joint sureties on the bond sued on. The complaint alleges that at the time it was filed Randall was absent from the state of California and without the jurisdiction of the court. In such cases it is not necessary to make the absent joint contractor a party to a suit on the joint contract to recover a personal judgment. (15 Ency. of Plead. & Prac., p. 550; *Merriman* v. *Barker*, 121 Ind. 80, [22 N. E. 994].)

No further finding was necessary to justify the allowance of interest. It appeared from the findings that the certificate of the architects, Train and Liddell, showing that the above-mentioned sums, amounting to $747.41, were due the owner, was made in writing on June 7, 1901. At that time, if not sooner, this demand became a liquidated and matured debt bearing legal interest. Interest was allowed from that date.

The judgment is affirmed.